UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

       - against –

LEMREY ANDREWS,

          Defendant.

------------------------------X

**MEMORANDUM AND ORDER**

01 Cr. 450 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court is an application filed on September 11, 2023 by defendant Lemrey Andrews, a/k/a "Pimp Blood Red," a/k/a "Bloody Pimp," a/k/a "Pimp," a/k/a "Gerald Andrews," a/k/a "Lenny Andrews," a/k/a "Emmy Clark," a/k/a "Young Redd," a/k/a "PI" (hereinafter, "Andrews" or "defendant"), seeking to reduce his 352-month sentence to time-served pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release provision.

In 2001, Andrews was indicted as a member and leader in the United Blood Nation gang, more commonly known as "the Bloods."  On August 27, 2002, a jury convicted Andrews of: (1) participating in a racketeering organization, in violation of 18 U.S.C. §§ 1961, 1962(c) (Count 1 of the indictment); (2) participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2); (3) conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 3); (4) transporting women in

interstate commerce for the purposes of promoting prostitution, in violation of 18 U.S.C. § 2421 (Count 23); (5) enticing and coercing women in interstate commerce for the purposes of promoting prostitution, in violation of 18 U.S.C. § 2422(a) (Count 24); (6) using a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 31); and (7) possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g) (Count 37).  See ECF No. 412-2.  On April 16, 2003, Andrews was sentenced to 352-months' imprisonment, which was comprised of 240 months on Count 1, 52 months on Count 2, and 60 months on Count 31, all to run consecutively, as well as 120 months on each of Counts 3, 23, 24, and 37, running concurrently with each other and with the 352-month aggregate sentence.

Subsequently, Andrews appealed his sentence and conviction, arguing, inter alia, that he received ineffective assistance of counsel, that the jury's exposure to media reports rendered his trial unconstitutional, and that he should be resentenced pursuant to United States v. Booker, 543 U.S. 220 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).  The Second Circuit affirmed Andrews' conviction and declined to rule on Andrews' ineffective assistance of counsel claim observing that such a claim is "more appropriately addressed in a proceeding pursuant to 28

U.S.C. § 2255." <u>United States v. Portee</u>, 129 F. App'x 652, 655 (2d Cir. 2005). However, the Circuit remanded the case to this Court to consider whether resentencing was appropriate, given that <u>Booker</u> had been decided in the interim between Andrews' sentence and his appeal. <u>Id.</u> On April 21, 2006, this Court declined to modify Andrews' original sentence, finding that, even if <u>Booker</u> had been decided before Andrews' sentencing, this Court would not have imposed a different sentence because "Andrews' history of criminal activity does not consist merely of isolated incidents that occurred long ago, but rather a persistent pattern of criminality." <u>United Sates v. Andrews</u>, No. 01 Cr. 0450, 2006 WL 1063286, at *2 (S.D.N.Y. Apr. 21, 2006). Again, Andrews appealed, and the Second Circuit affirmed, finding reasonable this Court's determination that "Andrews's sentence was supported by his long history of criminality, by the serious crimes for which he was convicted in this case, and as a necessary deterrent against future criminal conduct." <u>United States v. Andrews</u>, 254 F. App'x 835, 837 (2d Cir. 2007).

On April 3, 2008, Andrews filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of his trial counsel. This Court denied the petition on March 31, 2009, finding that Andrews failed to demonstrate that

his lawyer's performance "fell below an objective standard of reasonableness in light of prevailing professional norms and failed to affirmatively prove prejudice." Andrews v. United States, No. 08 Civ. 3325 (NRB), 2009 WL 860702, at *6 (S.D.N.Y. Mar. 31, 2009) (citations and quotations omitted). The Second Circuit affirmed. Andrews v. United States, 381 F. App'x 51 (2d Cir. 2010).

Before the Court now is defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which the Government strongly opposes.[1] See ECF Nos. 408, 411, 412, 413. For the reasons set forth below, the motion is denied.

---

[1] On July 24, 2023, newly appointed defense counsel indicated to the Court an intent to file a motion to vacate one of Andrews' convictions predicated on a violation of 18 U.S.C. § 924(c). ECF No. 406. Instead, on September 8, 2023, defendant filed the instant motion, seeking to reduce his sentence on compassionate release grounds pursuant to 18 U.S.C. § 3582. ECF Nos. 408, 411, 412, 413. The Government asked the Court to deny this motion based on defendant's failure to make a prior application to the Bureau of Prisons ("BOP") in accordance with 18 U.S.C. § 3582(c)(1)(A) and requested a modification of the previously ordered briefing schedule. ECF No. 414. On September 29, 2023, this Court requested that defendant file an application to the BOP and that the parties brief the instant motion "as if it is November 1, 2023 and the amendments to the Sentencing Guidelines have become operative." ECF No. 416.

Further, Andrews has made it unambiguously clear that in this motion he does not seek to vacate his 18 U.S.C. § 924(c) conviction. ECF No. 420 ("Def. Reply") at 3-4. In addition, Andrews, in his moving brief, was explicit that he had decided not to seek leave from the Second Circuit to file a successive 28 U.S.C. § 2255 motion at this time. ECF No. 412 ("Def. Mot.") at 3, 5-6. It appears to the Court that both of these decisions were driven by the recognition of the consequences of Andrews' failure to timely seek vacatur of his § 924(c) conviction on Count 31 within the applicable one-year time period mandated by § 2255. Id.; ECF No. 417 ("Govt. Opp.") at 8.

## I.   Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), a court may "reduce the term of imprisonment" on compassionate release grounds if, after considering the factors set forth in 18 U.S.C. § 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  The moving defendant bears the burden of proving that "extraordinary and compelling reasons" justify a reduction of his or her sentence.  United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992); see also United States v. Castelle, No. 18 Cr. 15, 2022 WL 4536798, at *1 (S.D.N.Y. Sep. 28, 2022).  A motion for compassionate release is "not an opportunity to second guess or to reconsider the sentencing court's original decision." United States v. Roney, 833 F. App'x 850, 854 (2d Cir. 2020) (citation and quotations omitted).  Finally, the statute requires that a defendant fully exhaust all administrative remedies before moving for compassionate release.  18 U.S.C. § 3582(c)(1)(A).

## II.  Andrews' Asserted Grounds for Compassionate Release

Citing to recently promulgated amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index of the Guidelines Manual ("November 1, 2023 Amendments" or

"Amendments"), defendant moves for compassionate release based on four alleged extraordinary and compelling reasons.  <u>See generally</u> Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254 (proposed May 3, 2023).  Specifically, Andrews relies on: (1) the change in law following the Supreme Court's decision in <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), which limited the types of convictions that could support an § 924(c) charge; (2) Andrews' record of rehabilitation; (3) Andrews' health conditions; and (4) recent changes to the Sentencing Guidelines that allegedly negate Andrews' status as a Career Offender and reduce his criminal history status points.  <u>See</u> Def. Mot. at 9-24.  We address each in turn.

### a. Andrews' <u>Davis</u> Claim Is Not an Extraordinary and Compelling Circumstance Warranting a Sentence Reduction

#### i. Recent Amendments to the Sentencing Guidelines

Following a more than three-year period from 2019 to 2022 during which the Sentencing Commission lacked a quorum, the Sentencing Commission regained full membership in August 2022 and subsequently, on April 27, 2023, submitted the November 1, 2023 Amendments to Congress for its review.  These Amendments, among other things, responded to case law that developed following the enactment of the First Step Act and expanded the categories of

extraordinary and compelling reasons that could justify sentence reductions.  See U.S. Sent'g Guidelines Manual supplement to app. C (U.S. Sent'g Comm'n 2023) ("Supplement to Appendix C") at 200-210.  Of particular relevance here, the Sentencing Commission addressed in "Amendment 814" an issue that had resulted in conflicting decisions in both circuit and district courts, namely, whether a change in the law may be considered an extraordinary and compelling reason warranting a sentence reduction within the meaning of 18 U.S.C. § 3852(c)(1)(A).  Id.; see also U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2023) ("U.S.S.G. § 1B1.13").

Here, the parties dispute whether that amendment applies to both retroactive and non-retroactive changes in law or is limited to non-retroactive changes.  With that dispute in mind, we review the relevant provisions in the Guidelines Manual as well as the corresponding section of the Supplement to Appendix C.

Two of the changes are central to this issue.  First, Amendment 814 added U.S.S.G. § 1B1.13(b)(6) (or "Subsection (b)(6)") entitled "Unusually Long Sentence," which provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant

presents an extraordinary and compelling reason, but
only where such change would produce a gross disparity
between the sentence being served and the sentence
likely to be imposed at the time the motion is filed,
and after full consideration of the defendant's
individualized circumstances.

Subsection (b)(6).   Amendment 814 also includes U.S.S.G. §

1B1.13(c) (or "Subsection (c)") entitled "Limitation on Changes in

Law," which provides:

> Except as provided in subsection (b)(6), a change in the
> law (including an amendment to the Guidelines Manual
> that has not been made retroactive) shall not be
> considered for purposes of determining whether an
> extraordinary and compelling reason exists under this
> policy statement. However, if a defendant otherwise
> establishes that extraordinary and compelling reasons
> warrant a sentence reduction under this policy
> statement, a change in the law (including an amendment
> to the Guidelines Manual that has not been made
> retroactive) may be considered for purposes of
> determining the extent of any such reduction.

Subsection (c).

The Supplement to Appendix C, which accompanied the November

1, 2023 Amendments, contains helpful commentary.  See generally

Supplement to Appendix C at 200-210.  The Sentencing Commission

observes therein that subsections (b)(6) and (c) "operate together

to respond to a circuit split concerning when, if ever, non-

retroactive changes in law may be considered as extraordinary and

compelling reasons," and ultimately "authorize a district court to

consider <u>non-retroactive</u> changes in law . . . ." <u>Id.</u> at 208 (emphasis added). Specifically, in describing the addition of Subsection (b)(6), the Sentencing Commission stated that this new ground "permits a judge to consider a non-retroactive change in sentencing law as an extraordinary and compelling reason in specified circumstances." <u>Id.</u> at 206; <u>see also</u> <u>id.</u> at 208 (subsection (b)(6) "permits non-retroactive changes in law . . . to be considered extraordinary and compelling reasons").

While Subsection (b)(6) controls the types of changes in the law that can represent an extraordinary and compelling reason, Subsection (c) also allows courts to consider "<u>all</u> changes in law, including non-retroactive amendments to the Guidelines Manual," when "determining the extent of a sentencing reduction," but only if a defendant has "<u>otherwise</u> establishe[d] that extraordinary and compelling reasons warrant a sentence reduction." <u>Id.</u> at 209 (second emphasis added); <u>see also</u> Subsection (c). Accordingly, a change in law considered under Subsection (c) cannot, on its own, constitute an extraordinary and compelling reason warranting a sentence reduction. <u>Id.</u>

The Commission's decision to limit the expanded list of extraordinary and compelling reasons to non-retroactive changes in the law is consistent with case law in this Circuit and others

that stands for the proposition that defendants cannot use compassionate release as an end-run around a properly filed post-conviction Section 2255 motion or appeal, which have always been available to address retroactive changes in law. See, e.g., United States v. Amato, 48 F.4th 61, 65 (2d Cir. 2022) (holding that "[i]f a defendant contends his conviction by a federal court is invalid, Congress has provided a vehicle to raise such a challenge through a motion pursuant to 28 U.S.C. § 2255, which imposes particular procedural limitations" that a defendant "cannot evade . . . by attacking the validity of his conviction through § 3582."); United States v. Ferguson, 55 F.4th 262, 270-71 (4th Cir. 2022) ("[N]o matter how an inmate characterizes his request for relief, the substance of that request controls. If in substance he attacks his conviction and/or sentence, his filing is subject to the rules set forth in § 2255.  'Insisting that defendants use the correct process to challenge their convictions and sentences,' . . . 'is not empty formalism.'") (internal citation omitted); United States v. Hunter, 12 F.4th 555, 568 (6th Cir. 2021) ("[W]e will not read § 3582(c)(1)(A)'s 'general permission' in a way that would 'swallow' the more 'specific prohibition or permission' for habeas relief.") (citations omitted).[2]  To conclude otherwise would mean

---

[2] See also United States v. Minaya, No. 01 Cr. 619 (VM), 2020 WL 5512518, at *3 (S.D.N.Y. Sept. 14, 2020) ("Courts in this district and others have held that

to accept the proposition that the Sentencing Commission has the authority to rewrite a statute and binding case law interpreting the relationship between compassionate release and 28 U.S.C. § 2255.

Having considered the text of the November 1, 2023 Sentencing Guidelines, Policy Statement, Official Commentary, and the reasons for Amendment 814 provided in the Supplement to Appendix C, as well as the legal context of the Amendments, this Court finds that Amendment 814 was not intended to address retroactive changes in the law.

---

it would be 'improper' to allow defendants to use Section 3582 as a 'vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition.'") (citations omitted); United States v. Nosair, No. 93 Cr. 181 (PKC), 2022 WL 1104914, at *5 (S.D.N.Y. Apr. 13, 2022) ("[a] motion for compassionate release should not be used to attack the legitimacy of a judge's imposed sentence – such an attack is properly brought on direct appeal or in a habeas petition, not in a motion for compassionate release . . . . To hold otherwise would be to allow compassionate release motions to act as an end run around the limitations imposed by § 2255.") (citations omitted); United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("Although the Court has the discretion to determine what qualifies as an extraordinary and compelling reason, the Court believes that it would be both improper and inconsistent with the First Step Act to allow [the defendant] to use 18 U.S.C. § 3582(c)(1)(A) as a vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition") (citations omitted); United States v. Williams, No. 09 Cr. 558 (CM), 2023 WL 4785286, at *4 (S.D.N.Y. July 27, 2023) (relying on Amato, 48 F.4th at 63, the court rejected defendants' arguments for compassionate release based on the validity of their convictions "because such attacks are only properly made on direct appeal or via habeas," though ultimately granted defendants' motion on separate grounds); United States v. Alvarez, No. 89 Cr. 0229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020) ("[A]pplications for compassionate relief are not vehicles for collaterally attacking the merits of a defendant's sentence.").

### ii. Application

With this determination in mind, we turn to Andrews' contention that the Davis decision -- which the Second Circuit has found applies retroactively, see Hall v. United States, 58 F.4th 55, 62 (2d Cir. 2023) -- either "constitutes an 'extraordinary and compelling' reason for a sentence reduction" under prior case law and U.S.S.G. § 1B1.13(b)(6) or otherwise qualifies as one of many factors that "may be considered in determining the extent of any reduction" under U.S.S.G. § 1B1.13(c). Def. Mot. at 10-13. Specifically, Andrews argues that the Court should consider the impact of Davis on his § 924(c) conviction as a basis for reducing his sentence to time-served, as only the time ascribable to his § 924(c) conviction remains to be served. It is important to recall, as discussed earlier in footnote 1, that Andrews has made it explicit that he is not seeking to vacate his § 924(c) conviction, nor is he pursuing an application to the Circuit for leave to file a successive § 2255 petition.

We first address whether Andrews' § 924(c) conviction (Count 31) may by itself constitute an extraordinary and compelling reason for a sentence reduction. Because the Second Circuit has found that Davis applies retroactively to petitioners who seek timely collateral review of their convictions, which Andrews does not

dispute, Def. Mot. at 5, 13, the change in law resulting from <u>Davis</u> cannot be considered an extraordinary and compelling reason under subsection (b)(6).   <u>Hall</u>, 58 F.4th at 62; Subsection (b)(6).

Even if this Court's reading of the Amendments is incorrect and Subsection (b)(6) was intended to apply to retroactive changes in the law, Andrews would nevertheless fail to meet the requirements of (b)(6) because a court may only take into account a change in law "<u>after</u> full consideration of the defendant's individualized circumstances."   Subsection (b)(6) (emphasis added); <u>see also</u> Supplement to Appendix C at 208.   As explained below, however, defendant's individualized circumstances -- wholly apart from his <u>Davis</u> claim -- do not warrant a grant of compassionate release.

Andrews also argues that the Court should consider the change in law pursuant to Subsection (c) as "among the broad array of factors . . . in determining the extent of any such reduction" in his sentence.   Def. Mot. at 11.   Again, regardless of whether the Sentencing Commission intended to include retroactive changes in law, a court can only consider a change in law under Subsection (c) where a defendant "otherwise establishes" that "a combination of the other . . . factors" independently "constitute[] an extraordinary and compelling reason."   <u>See</u> Supplement to Appendix

-13-

C at 209.  Again, for the reasons discussed below, Andrews has failed to demonstrate other extraordinary and compelling reasons to support compassionate release.

### b. Andrews Has Not Demonstrated That His Record of Rehabilitation While Incarcerated Is an Extraordinary and Compelling Reason to Reduce His Sentence

Andrews argues that his record of rehabilitation while incarcerated is an extraordinary and compelling factor weighing in favor of compassionate release.  Def. Mot. at 6-8, 23-24.  It is worth recalling that by statute, 28 U.S.C. § 994(t), rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.  Specifically in support of this argument, Andrews cites his completion of "more than 200 educational programs" and his General Education Diploma, as well as his pursuit of vocational courses.  Id. at 6-7.  Andrews adds that he was accepted into the Bureau of Prison's "gang drop out yard" program, which places inmates who have renounced their gang affiliation into facilities limited to other similarly situated prisoners. Id. at 7.

Despite Andrews' commendable educational pursuits, Andrews' disciplinary records illustrate that he may not seriously rely on rehabilitation to support his release.  Andrews has been the subject of approximately 108 documented infractions -- a large

portion of which closely relate to the types of crimes for which Andrews was convicted.  Govt. Opp. at 9; see generally ECF No. 417-1 ("BOP Disciplinary Records").  Of his infractions, 39 relate to physical aggression or sexual misconduct, five involve masturbation in front of or showing his genitals to female staff, and three concern the possession of a dangerous weapon.  See, e.g., BOP Disciplinary Records at 2, 3, 6-11, 13, 16, 24, 27.

Andrews' pattern of misconduct has continued at a steady pace throughout his time in prison, with no sign of improvement.  As of September 5, 2023, when his disciplinary records were pulled, Andrews had six recorded infractions in 2023 alone, which included allegations of inappropriate sexual proposals and/or threats and threats to defecate on walls and windows.  Id. at 2-4.  As recently as 2018, Andrews was reported to have masturbated in front of female staff.  Id. at 6.  These are not minor infractions.  Andrews' pattern of behavior is the opposite of rehabilitation.

### c. Andrews' Health Conditions Do Not Rise to Extraordinary and Compelling Circumstances

Andrews contends that he "suffers from [several] health conditions" -- including kidney disease, high blood pressure, high cholesterol, anxiety disorder, presbyopia (farsightedness), general decline in dental health, hypertension, plantar fascial fibromatosis on both feet, prediabetes, severe brain fog from

marijuana use disorder, and chronic nocturnia [sic] -- that necessitate his release. See Def. Mot. at 8; id. Ex. 1 ("Andrews' Medical Records"). These conditions, while numerous, do not rise to an extraordinary and compelling circumstance warranting Andrews' release.

First, Andrews does not even suggest that he suffers from medical conditions "sufficiently serious" to render the conditions of his confinement extraordinary and compelling. United States v. Zubkov, 460 F. Supp. 3d 450, 454-55, 457 (S.D.N.Y. 2020) (defendant failed to show that his medical issues were "sufficiently serious" to warrant a grant of compassionate release); see also United States v. Stratford, No. 21-568-CR, 2022 WL 2057517, at *2 (2d Cir. June 8, 2022) (affirming the lower court's finding that a Type 2 diabetes diagnosis and the corresponding risk of illness from COVID-19 were not severe enough to constitute an extraordinary and compelling circumstance). In fact, BOP medical staff have characterized Andrews' kidney disease as "mild." Andrews' Medical Records at 2, 3, 6.

Second, Andrews has not demonstrated that the BOP cannot adequately address his medical needs. See, e.g., United States v. Robinson, No. 21-1865-CR, 2022 WL 2204126, at *2 (2d Cir. June 21, 2022) (affirming the district court's determination that

defendant's health conditions did not constitute an extraordinary and compelling circumstance, in part due to the absence of evidence showing inadequate treatment); United States v. Gonzalez, No. 03 Cr. 1310 (LAP), 2022 WL 874996, at *3 (S.D.N.Y. Mar. 24, 2022) (denying compassionate release motion where defendant's medical records did not support his claim that he was not receiving treatment for conditions).  Andrews' medical records illustrate that the BOP is managing and treating his health conditions.  See Def. Mot. at 8 (stating that Andrews "currently is prescribed several different types of medications for his conditions, and has periodic check-ups for these conditions").  In fact, Andrews does not complain about the way he is being treated in confinement, let alone that his health conditions are not being treated.  Id.  Thus, Andrews' mild and adequately treated health conditions do not support a reduction in his sentence.

### d. The November 1, 2023 Guidelines Amendments Do Not Impact Andrews' Guidelines Range and Thus Do Not Present a Compelling Circumstance

Andrews also advances several arguments under separate portions of the November 1, 2023 Amendments.[3]  Id. at 15-17; ECF No. 421.  Specifically, Andrews contends that the Amendments would

---

[3] The amendments relied on by Andrews in this section are either not retroactive or not retroactively applicable until February 1, 2024.  See § 1B1.10(d).

-17-

reduce his Guidelines range because they (1) negate his prior status as a career offender under § 4B1.1; (2) reduce his criminal history points from 13 to 12; and (3) warrant a further reduction in his criminal history points given the impact of his prior marijuana convictions.  Andrews argues that these changes present an additional compelling reason justifying a sentence reduction. Id.  We address each of these arguments seriatim.

First, Andrews argues that because the predicate offense for Andrews' Count 31 conviction does not constitute a crime of violence pursuant to Davis, Andrews can no longer be classified as career offender.  Def. Mot. at 15.  This argument lacks support. In fact, the November 1, 2023 Amendments responded to a circuit conflict concerning the authoritative weight of the former Application Notes to § 4B1.2 by explicitly confirming that the definition of "crime of violence" under the Guidelines includes certain inchoate crimes.  Supplement to Appendix C at 246-47; U.S.S.G. § 4B1.2(a).  The Commission did so by transferring the exact language from the Application Notes to the text of the Guidelines, thereby mooting the circuit split.  Id.  Thus, a crime of violence as used to define a career offender under § 4B1.1 includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has an

element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). Further, by inserting a new subsection entitled "Inchoate Offenses Included," the Amendments make clear that the Guidelines' definition of crime of violence includes "aiding and abetting, attempting to commit, or conspiring to commit" violent offenses. § 4B1.2(d); see also Supplement to Appendix C at 245.

Given this revised definition, Andrews still qualifies as a career offender, as the offense underlying his Count 31 conviction -- conspiracy to commit murder in aid of racketeering -- remains a crime of violence as defined by the Guidelines. § 4B1.1(a); § 4B1.2(a). As a career offender, Andrews automatically remains in criminal history category VI, and thus his Guidelines range would not change. § 4B1.1(b).

Second, Andrews argues that, if sentenced today, he would receive one less criminal history point for having committed the instant offense while under a criminal justice sentence, resulting in 12 criminal history points rather than 13. Def. Mot. at 16-17. According to Andrews, this would place him in criminal history category V rather than VI. Id. Although this Court agrees that Andrews would receive only 12 points under the revised Guidelines, this would not impact his criminal history category given Andrews'

status as a career offender.  See supra, at 17-19.  Thus, Andrews

again remains in category VI.  § 4B1.1(b).

Finally, Andrews advances two arguments relating to the

impact of his prior marijuana convictions on his sentence.  First,

he contends that changes in the law regarding two marijuana

possession convictions "materially affect[]" his guidelines range

by placing him in criminal history category V because those

convictions "would be expunged upon application by Mr. Andrews

pursuant to New York State's revised marijuana laws."  Def. Reply

at 7.  Second, in a supplemental letter to the Court filed on

November 20, 2023, defendant adds that the revised commentary to

§ 4A1.3 of the Guidelines provides that a "downward departure from

the defendant's criminal history category may be warranted . . .

[if t]he defendant received criminal history points from a sentence

for possession of marihuana for personal use . . ."  U.S. Sent'g

Guidelines Manual § 4B1.2 cmt. n.3 (U.S. Sent'g Comm'n 2023); see

ECF No. 421 at 3-4.  Andrews contends that these changes constitute

an additional compelling reason warranting a sentence reduction.

Id.; Def. Mot at 15-17.

Andrews' arguments fail.  First, even if Andrews had in fact

expunged his New York State marijuana convictions, which he has

not done, he would still be in criminal history category VI as a

career offender.  U.S.S.G. § 4B1.1(b).  Second, the revisions to § 4A1.3 concerning downward departures, located in Part B, Subpart C of Amendment 821, have not been given retroactive effect. U.S.S.G. § 1B1.10(d).  Moreover, even if this Court were to apply this amendment retroactively, Andrews still qualifies as a career offender and thus "[t]he extent of a downward departure . . . may not exceed one criminal history category."  U.S.S.G. § 4A1.3(b)(3)(A).  Consequently, Andrews' criminal history category would at most be reduced from VI to V.  When this Court sentenced Andrews, it calculated Andrews' Guidelines range as 360 months to life imprisonment based on a criminal history category VI and an offense level of 37.[4]  Even if we were to reduce Andrews' criminal history category to V, Andrews still has an offense level of 37, and thus his 352-month sentence would remain well within the Guidelines range of 324 to 405 months associated with that category.  See U.S.S.G. § 5A.

### III. The Section 3553(a) Factors Counsel Against Reducing Andrews' Sentence

Even if Andrews had demonstrated extraordinary and compelling circumstances, the application of the factors set forth in 18 U.S.C. § 3553(a) as required in consideration of a compassionate

---

[4] Neither side contends that Andrews' offense level of 37 is affected by the November 1, 2023 Amendments.

release petition counsel against release.  Those factors include "the nature and circumstances of the offense," as well as the need "to protect the public from further crimes of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. §§ 3553(a)(1), (a)(2)(C), (a)(6).

The offenses for which Andrews is incarcerated arose from his affiliation with the Bloods.  Specifically, Andrews and the founder of the Bloods agreed that a rival drug dealer should be murdered and then encouraged a teenager to effectuate that agreement, which he did by shooting approximately 30 rounds into the door of the rival's apartment, fortunately only wounding his hand.  Andrews, 2006 WL 1063286, at *3; Andrew's Presentence Investigation Report ("PSR") ¶¶ 80-81.  Andrews also ran the Bloods' interstate prostitution business, forcing women to have sex with him before allowing them to work as prostitutes, exercising rigid control over the prostitutes who worked for him, and routinely beating them.  Andrews, 2006 WL 1063286 at *3; PSR ¶¶ 91-95.  For example, Andrews beat one woman with a cane and punched another in the face when she attempted to leave, shattering her teeth and breaking her nose.  Govt. Opp. at 2; Andrews, 2006 WL 1063286 at *3.  Andrews required the women working for him to tattoo the name of the

Bloods' prostitution business, "Young Redd," on their bodies.  PSR ¶ 91.  Accordingly, the nature and circumstances of Andrews' offenses strongly counsel against release.

Defendant also points to his personal history and characteristics -- specifically, a traumatic and unstable childhood and confinement in juvenile detention -- and his programming record.  Def. Mot. at 24-36, 38.  He argues that the time he has served (the equivalent of more than a 308-month sentence) satisfies § 3553(a)(2)(A)'s objective of just punishment and adequately reflects the seriousness of the offense and promotes respect for the law; provides adequate deterrence; and protects the public from further crimes because his "record in prison . . . demonstrates that he is not a danger of recidivism at this point." Id. at 36-38.  Finally, Andrews argues that the need to avoid unwarranted sentence disparities in sentencing further supports Andrews' motion.  Id. at 38.

None of these arguments are persuasive.  In our 2006 Memorandum and Order, this Court rejected similar arguments that § 3553(a) factors supported a shorter sentence given "Andrews' long history of criminality and . . . the serious crimes for which he was convicted in this Court." Andrews, 2006 WL 1063286 at *3.  Andrews continues to pose a danger to the community, as he has

-23-

exhibited reprehensible conduct in prison.  While defense counsel argues that "recidivism substantially and steadily diminishes for older age groups, particularly for those older than age 30," Andrews is only 48 years old and there is still a significant rate of recidivism in this age bracket.  Def. Mot. at 37-38; U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, Dec. 2017.  The Sentencing Commission has found that the rearrest rate for men ages 40 to 49 at the time of release is 46.4%.  Id. at 24.  Even for men ages 50 to 59, the Commission's study on the effects of aging on recidivism found a rearrest rate of 29.2%, or nearly one in three defendants in that age range.  Id.

The only other change that has taken place since this Court's 2006 Memorandum and Order is the vacatur of co-defendant Gary Jackson's Section 924(c) conviction and Jackson's subsequent resentencing.  See ECF No. 361.  Defendant thus contends that his sentence is not commensurate with those of other defendants and in conflict with Section 3553(a)(6)'s requirement to avoid "unwarranted disparities in sentencing."  Def. Mot. at 22, 38. Jackson's resentencing does not result in an unwarranted disparity among "defendants with similar records who have been found guilty of similar conduct."  Id. at 38.  Not only was Jackson resentenced because he filed a timely Section 2255 petition to vacate his

Section 924(c) conviction, but Jackson also both presented a significantly less concerning disciplinary record while in prison in terms of both quantity and severity of infractions[5] and was convicted of less serious crimes. See generally ECF No. 412-2. In fact, when resentencing Jackson, this Court considered "the fact that his record in custody is reasonably decent," noting that his disciplinary history, while "not perfect," was "far from awful." See ECF No. 363 at 11-12. Moreover, unlike Andrews, Jackson was not convicted of a substantive RICO count or involvement in the Bloods' prostitution business. ECF No. 412-2. Thus, Andrews fails to demonstrate that a reduction in sentence is required to avoid unwarranted sentencing disparities.

## CONCLUSION[6]

In conclusion, not only is the change in law stemming from Davis not a cognizable basis for a sentence reduction under the November 1, 2023 Amendments, but Andrews' other arguments do not come close to rising to the level of extraordinary or compelling reasons under § 3582. Moreover, the Section 3553(a) factors

---

[5] Jackson was the subject of only seven documented infractions.

[6] The Court wishes to express its sincere and deep appreciation to Joshua L. Dratel, who the Court appointed to represent Mr. Andrews, for his vigorous and substantial efforts in the finest traditions of this Court's Criminal Justice Act Panel. The Court's rejection of the motion should in no way be considered a reflection on the quality of counsel's advocacy, but rather, as it should always be, a reflection of the Court's view of the governing law.

counsel against release. Accordingly, for the reasons stated above, defendant's motion for compassionate release is denied. The Clerk of the Court is respectively directed to close the motions pending at ECF No. 411.

       **SO ORDERED.**

Dated:    December 7, 2023
           New York, New York

                            NAOMI REICE BUCHWALD
                      UNITED STATES DISTRICT JUDGE